

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Delaware

| | |
|---|---|
| United States of America<br>v.<br>Eric Quinn<br><br>Defendant(s) | ) ) ) ) ) ) ) )  Case No. 24-258M |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __August 1, 2024__ in the county of __New Castle__ in the
_____ District of __Delaware__ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 922(g)(1) & Section 924(a)(8) | Possession of a Firearm or Ammunition by a Prohibited Person |
| 18 U.S.C. Section 922(o)(1) & Section 924(a)(2) | Possession of a Machinegun |

This criminal complaint is based on these facts:

See attached affidavit

FILED
AUG - 2 2024
U.S. DISTRICT COURT DISTRICT OF DELAWARE

☑ Continued on the attached sheet.

_____
Complainant's signature

Easton Weaver, Special Agent, HSI
Printed name and title

Sworn to before me over the telephone and signed by me pursuant to Fed R. Crim. P.4.1 and 4(d).

Date: __08/02/2024__

_____
Judge's signature

City and state: __Wilmington, DE__   The Honorable Laura D. Hatcher, U.S. Magistrate Judge
Printed name and title

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Easton Weaver, being duly sworn, depose and state as follows:

## BACKGROUND

1. I am a special agent with Homeland Security Investigations ("HSI"), an agency within the Department of Homeland Security, and have been so employed since August of 2023. I attended the Criminal Investigator Training Program and the HSI Special Agent Training in Glynco, Georgia. I am currently assigned to HSI Resident Agent in Charge (RAC) Wilmington, Delaware, Border Enforcement Security Task Force (BEST). I received training and experience in weapons trafficking and firearms violations, including the importation and exportation of controlled items, gang crimes, and financial crimes. I have conducted or participated in surveillance, debriefings of informants, and the execution of search and tracking warrants. Based on my training, knowledge, and experience, I am familiar with habits, methods, routines, practices, and procedures commonly employed by persons who illegally possess, sell, and traffic firearms. From my training, knowledge, experience, and conversations with other agents and officers, I am also familiar with the techniques employed by persons who attempt to acquire and possess firearms in violation of the National Firearms Act and who attempt to do so by evading detection by law enforcement.

2. This affidavit is in support of a criminal complaint against Eric QUINN charging him with one count of felon in possession 18 U.S.C. § 922 (g)(1) and 922(o).

3. The statements in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents of HSI and other federal law enforcement agencies. Because this Affidavit is submitted for the limited purpose of establishing probable cause, I have not set forth each and every fact known to this investigation. This

Affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## BACKGROUND REGARDING AUTO SEARS

4. Under 26 U.S.C. § 5845(a)(6), part of the National Firearms Act ("NFA") the definition of "Firearm" includes "a machinegun." The term "machinegun" is defined in 26 U.S.C. § 5845(b) and "means any weapon which shoots . . . automatically more than one shot, without manual reloading, by a single function of the trigger." The term also includes "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun."

5. I also know that the Gun Control Act, at 18 U.S.C. § 922(o), makes it unlawful, subject to certain exceptions that do not apply in this case, for "any person to transfer or possess a machinegun." 18 U.S.C. § 922(o). The Gun Control Act incorporates by reference the NFA definition of a machinegun. 18 U.S.C. § 921(a)(24).

6. Based upon my training, experience, and discussions with other federal agents related to the investigation of international import-related NFA violations, I know of conversion devices that have been designed and created for the sole purpose of converting semi-automatic Glock pistols into fully automatic machineguns. These devices vary by design and appearance but all, when properly installed on a semi-automatic Glock pistol, will allow the firearm to expel more than one projectile by a single pull of the trigger, at a rate of approximately 1,200 rounds per minute. Installation of these conversion devices is fast and simple, requires no technical expertise, and is completed by simply removing the polymer slide cover plate on a Glock semi-automatic pistol and replacing it with a conversion device. These devices are referred to by different names, including but not limited to: "switches," "auto-sears," "convertors," "conversion

switches," "selector switches," "conversion devices," and "Fire Selector Systems for Glock, or "FSSGs." To avoid confusion, in this Affidavit I refer to these devices as "Glock auto sears."

7. Based upon my training, experience, and discussions with other federal agents related to the investigation of international import-related NFA violations, I know that ATF considers Glock auto sears as, "post-May 19, 1986, machineguns." In other words, Glock auto sears are "machineguns" as defined in 26 U.S.C. § 5845(b) and 18 U.S.C. § 921(a)(24). Because Glock auto sears are considered machine guns under both the NFA and the Gun Control Act, apart from official military and law enforcement use, Glock auto sears may only be lawfully possessed by Federal Firearms Licensees who have paid the appropriate Special Occupational Tax required of those manufacturing, importing, or dealing in NFA weapons. With narrow exceptions, individuals are prohibited from owning machine guns, including Glock auto-sears. 18 U.S.C. § 922(o).

8. In my training, experience and conversations with law enforcement agents who conduct similar investigations, I am aware that that Glock auto-sears are often sold on social media applications like Telegram and Instagram or through shopping applications such as "Wish," "Geek," "Joom," and "DHgate," each of which is accessed through the internet using a computer, smartphone, or other similar device capable of internet access.

### CBP Seizes Two Parcels, Addressed To QUINN, Which Contained Two Glock Auto Sears

9. On July 24, 2024, U.S. Customs and Border Protection ("CBP") officers conducted an examination of an inbound USPS international mail parcel bearing tracking number 9261290339615700074789479 shipped from Miss Yang, Kenzi Neighborhood Creativity, Offic [*sic*], Guangdong, Shenzhen, China. The parcel was addressed to "Eric QUINN

, Middletown, Delaware 19709. CBP examined the parcel pursuant to 19 U.S.C. § 1595a(c)(1) and discovered that it contained one Glock auto sear.

10. On July 25, 2024, CBP officers conducted an examination of an inbound USPS international mail parcel bearing tracking number 9261292700545500082616848 shipped from Deng Yefan, 2nd Floor No 2 Donglian Industri [sic] Guangdong, Shenzhen, China. This SUBJECT PARCEL was addressed to Eric QUINN 233 Sheats Lane, Middletown, Delaware 19709. CBP examined this parcel pursuant to 19 U.S.C. § 1595a(c)(1) and discovered that it contained one Glock auto sear.

11. Both parcels each contained three separate components, which, when put together, constitute a fully functional Glock auto sear. Each individual piece of the Glock auto sear, as well as each fully constructed Glock auto sear, is small enough to fit within a person's pocket. The following photograph shows the Glock auto sear components found in one of the parcels:



12. The first parcel was seized by CBP on July 24, 2024, and the second parcel PARCEL was seized by CBP on July 25, 2024. The parcels and their contents have been in the custody of federal law enforcement since that date as HSI conducted its investigation.

13. As part of HSI's investigation, an agent from the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") conducted a visual review of photographs of the devices found within the parcels and concluded that the devices appeared to be consistent with the components of Glock auto sears.

## PROBABLE CAUSE FOR OFFENSES

14. On August 1, 2024, HSI special agents, United States Postal Inspection Service (USPIS) Postal Inspectors, Alcohol, Tobacco, and Firearms (ATF), and Delaware State Police Troopers executed an anticipatory search warrant issued by the Honorable Laura D. Hatcher, United States Magistrate Judge, at  Middletown, Delaware 19709. The triggering event for the search warrant was that the warrant could be executed once both of the parcels discussed herein (containing Glock auto sears) were accepted for delivery.

15. After the search warrant was issued, surveillance officers saw QUINN coming out of the Sheats Lane house and checking the mailbox at the home. He went back inside.

16. Agents and officers then delivered the parcels to the Sheats Lane house. An officer rang the doorbell and left the area of the front door. QUINN was seen by surveillance officers coming out of the house and picking up both packages, bringing them inside. QUINN was then seen by surveillance officers leaving the rear of his residence and going into an adjacent garage. Surveillance officers saw that QUINN had at least one brown box in his hands when he left the rear of the residence, and that box resembled the Glock auto sear packages. QUINN

eventually left the garage and re-entered the residence. Some time later, officers executed the search warrant.

17. During to the execution of the search warrant, agents and troopers recovered five rifles containing no serial numbers, one rifle with a serial number and eight pistols containing no serial numbers. Two of the eight pistols contained what appeared to be auto sears installed on them. The firearms were recovered in the bedroom closet where it was apparent to agents on scene that it was QUINN's bedroom closet because it contained male clothes. QUINN's wife had a separate closet in the bedroom with all of her belongings and was present for the execution of the search warrant. Glock auto sears that appeared to be the same items contained within the packages discussed above were found in the garage QUINN was seen entering.

18. Officer also found 9 mm, 10 mm, .300 blk, .40 Smith & Wesson, .22 LR, from manufacturers including Winchester, Hornady, PNC and Sellier and Bellot. Based on my preliminary research and my experience, those companies do not manufacture their ammunition in Delaware. After a preliminary count, the total number of rounds recovered, in bulk ammunition alone, was 1,877 rounds.

19. QUINN is a prohibited person. He has been convicted of a robbery second degree, an offense that carries a maximum sentence exceeding one year of incarceration, on September 23, 2010, in the state of Delaware. This information was provided by the Delaware Criminal Justice Information System (DELJIS) and the Federal Bureau of Investigation's National Crime Information Center (NCIC).

20. Agents also found components that, based on my training and experience and based on the training and experience of my fellow agents, and after consulting with experts at

ATF, I believe that the items that were in the above-mentioned parcels were auto sears, which are intended to convert handguns into automatic weapons ("machine guns").

21.  There is no indication, based on the paperwork found in QUINN's home or otherwise, that QUINN paid the appropriate Special Occupational Tax required of those manufacturing, importing, or dealing in NFA weapons, nor (based on my experience) would someone with his history typically be in the limited class of people permitted to possess machine guns.

22.  Because the evidence demonstrates that QUINN ordered these Glock auto sears from China, and because QUINN already possessed two Glock auto sears on weapons in his home, the evidence suggests that QUINN knew that the Glock auto sears had characteristics that rendered them a "machine gun."

23.  QUINN provided the following information during a post-Miranda audio and video recorded interview. QUINN stated to agents and officers that he built firearms on his premises, having purchased the gun parts online (either himself or his wife) from various websites. QUINN told agents that he fired the weapons "at the canal" multiple times. QUINN also said that he had touched and manipulated the firearms moving them in and out of his bedroom closet where they were recovered within the past week. QUINN admitted to agents that he was a convicted felon in 2010. Furthermore, QUINN's wife acknowledged to agents that the firearms were in QUINN's closet.

24.  While these weapons will be subject to expert analysis with ATF, preliminarily, I have examined the weapons located in QUINN's residence and found the following:

   a. All of the pistols recovered bore Polymer 80 branding, and Polymer 80 is manufactured in Dayton, Nevada;

b. One of the stocks on a rifle is branded Shockwave Technologies, which is located in Bountiful, Utah;

c. One of the rifles' bolt carrier group, a part of the weapon, was manufactured by Toolcraft, Inc, located in Marion, North Carolina;

d. A Magpool stock was found in the residence. Magpool is based in Cheyenne, Wyoming and Austin Texas;

e. Agents also found a Midwest Industries hand guard. That company is located in Waukesha, Wisconsin;

f. As noted, the ammunition found in the residence was not manufactured in Delaware.

Based on those facts, and because QUINN admitted during the interview that he (or his wife, at his request) purchased firearm parts for the guns seized on the internet, I conclude that the firearms and ammunition found in QUINN's residence, and possessed by QUINN, were shipped and transported in interstate or foreign commerce.

## CONCLUSION

25. WHEREFORE, based on the foregoing facts, I submit that there is probable cause to believe that Eric QUINN violated 18 U.S.C. § 922 (g)(1) and 924(a)(8), being a prohibited person in possession of a firearm and ammunition. I further submit that there is probable cause to believe that QUINN violated 18 U.S.C. § 922(o) and §924(a)(2), unlawful possession of a machine gun. Therefore, I respectfully request that the Court issue a criminal complaint charging QUINN with those offenses.

/s/ Easton Weaver
Special Agent Easton Weaver
Homeland Security Investigations

Sworn to telephonically before me pursuant to Federal Rule
of Criminal Procedure 4.1 this 2nd day of August 2024.

The Honorable Laura D. Hatcher
United States Magistrate Judge