IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 25-55-JLH |
| | : | |
| ERIC QUINN, | : | |
| | : | |
| Defendant. | : | |

## ERIC QUINN'S SENTENCING MEMORANDUM[1]

Eric Quinn is a simple man who loves his family and their full life together. He has always worked hard to support and protect his family and has used his mechanical talents to enjoy a successful career. Those same mechanical talents and his role as his family's provider and protector inspired his fascination with firearms.

Mr. Quinn's fascination, however, is over. He will never touch another firearm. This case has devastated him and has internalized the impact and message of law enforcement thoroughly. The defense requests a non-custodial sentence based on the nature and circumstances of his conduct and Mr. Quinn's personal history and characteristics. 18 U.S.C. § 3553(a)(1). A sentence of probation, along

_____

[1] As always, the defense has filed an Attachment A under seal for the court's review.

with a significant fine, is sufficient but not greater than necessary to achieve the goals of sentencing.

## I.    Eric Quinn's History and Characteristics Warrant a Significant Downward Variance and Support a Non-Custodial Sentence.

### A.    Mr. Quinn is a Kind and Generous Husband, Father, Son, and Friend.

*"Felicia and his twin sons ▆▆▆ and ▆▆▆ are his entire world."*[2]

Eric Quinn is a loving and well-loved husband, father, and friend. All of his many letters of support describe him as such. *See* Exs. B-E. He and his wife, Felicia, have been married for almost 10 years. She is a professional woman who has supported Eric throughout the years parenting their sons. They are true partners, best friends, and their commitment to each other is quite strong. Ex. B, Felicia Quinn letter, p. 1-2.



Felicia relates that Eric thrives as a father, and his sons feel the same way. He is a fun and vivacious father to two boys, leading with his strength of character, modeling how to take care of a home, coaching their teams, and providing gentle guidance.

---

[2] Ex. B, p. 9.

*See* Exs. B and C.  His sons idolize him, with one even dressing as him for "dress like your hero" day.



Mr. Quinn's support letters describe a kind, generous man who gives back to his community, who lends a hand to neighbors, and mentors local kids.  He has taught kids to ride bikes, coached his sons' teams, and spent individual time helping other kids develop their sports skills:

I have watched Eric sit on the sidelines and cheer for not only his kids but many kids that do not have a father figure in their lives. Eric has stepped in, without any hesitation, to coach the team when the coach was absent or a no show. As a board member and a coach in the league I have a great appreciation for Eric stepping in and helping out when needed because many of these kids look up to and admire our coaches as friends and in some cases father figures. To me it says a lot about a person who can instruct another person's child the same way he would instruct their own child.



Ex. C, Chris Lloyd letter, p. 4-5.

He is the person in the neighborhood who neighbors entrust with the spare keys and with pet-sitting duties.  Ex. C, p. 9-10.  He is the man they call when their

3

workplace is short staffed, or when something heavy needs lifting, or when a deck building project gets complicated.  Ex. C, p. 7, 9-11; Ex. D, p. 6-7.

Mr. Quinn grew up in Delaware.  Both of his parents worked for Wilmington University.  Donna, Eric's mother, is the Executive Director for the Office of the President at Wilmington University.  Eric's father, Bill, was the Director of Facilities and Maintenance at the university.  Donna and Bill raised Eric to value family, and they fostered close relationships with each other and with their grandparents, aunts, uncles, cousins, and extended family.  Ex. B, p. 9-10.

According to Donna, Bill was a "tinkerer," and Eric was "Bill cloned."  Eric and his brother were always right by their dad's side when he worked on anything.  Ex. B, p. 7, 9-11, 14; Ex. E.  Bill had an "all-consuming focus" and was meticulously organized.  Eric is the same way.

Eric's family suffered a series of losses in short succession.  First, his maternal grandfather passed away in 2018 from cancer.  His wife, Eric's grandmother, died just five months later.  Then, Bill died suddenly from Covid in 2021.  He was sick for just three weeks before he died.  He and Eric had been very close, and Eric still struggles with his grief.  His mother and other family and friends note that the sudden and tragic loss of his father has been particularly hard for Eric.  *See* Exs. B-D.  Eric receives treatment for ADHD and increased his counseling when this case began.

4

Catherine Luko treats him and notes that he carries significant "emotional pain" from the loss of his father, with whom he shared a close bond.  Ex. E.

### B.    Mr. Quinn is a Valued Skilled Worker

To call Eric a hard worker is an understatement.  He works well over 40 hours a week for his employer.  He is never out of work and quickly proves himself to be an essential part of any company.  *See* Ex. D.  He also works hard at home, maintaining his property in pristine condition, volunteering in his kids' classrooms, coaching their sports, and always lending a hand to the neighbors.  He is a man who washes his family's cars and mows the lawn twice per week.

He worked for Easy Lift Equipment Company, where he worked for over ten years.  Easy Lift supported him upon his arrest and at his detention hearing.  Ex. D, p. 3.  They wrote about what an essential and valued asset he was in his position as a machinist.  They also had the opportunity to see him interact with his sons and noted the love and mutual admiration his family had.  An Easy Lift coworker described him as the hardest working person who was dependable, organized, and efficient.  Ex. D, p. 6.  He also noted Eric's "meticulous" qualities.  *Id*.

Despite that glowing letter of support, Easy Lift let Eric go after his pretrial release.  Eric immediately found new work when Utilitrain hired him in late August 2024.  He quickly shifted to AUI, where he has thrived.  His AUI coworkers wrote

5

letters of support noting that he has become a key team member, demonstrating a

positive attitude and respect for all, and working above and beyond expectations.

Ex. D, p. 2, 4. Both Luke and Paul Granger, owners of Utilitrain and AUI,

respectively, and Eric's employers, wrote letters of support for Eric.  Luke writes:

> During his time with us, Eric immediately demonstrated initiative, responsibility, and pride in his work.  Without being asked, he organized and cleaned our facility, creating a safer and more efficient environment for everyone.  His work ethic and respect for others made a lasting impression on me and my team.
>
> Beyond the workplace, Eric is a devoted family man.  He is a husband and the father of two sons, and it is clear that his family is the center of his life.  His love and dedication to them is evident in how he speaks about them and in the choices, he makes to provide for and support them.

Ex. D, p. 2.  Paul Granger, aware of Eric's case, continues to support him and notes

Eric's significant contributions to the company and community:

> Eric has consistently demonstrated professionalism, reliability, and integrity in the workplace.   He approaches every task with determination, often going above and beyond expectations to ensure that the job is completed correctly and on time.  He is respected by colleagues and supervisors alike, not only for his skill, but also for his willingness to help others and contribute positively to our team.
>
> Beyond being an excellent employee, Eric is also a devoted family person who takes great pride in providing for and supporting his loved ones.   It is clear to me that Eric values responsibility, accountability, and hard work—qualities that have defined his time with us.

Ex. D, p 4.  His employers' letters make clear that they do not see him as any type of threat or danger, that he is a valued employee worthy of investment, and that he will continue to have a job if he can remain out of custody.

## II.    A Non-Custodial Sentence is Sufficient Considering the Nature and Circumstances of the Offense.

Any firearm offense is serious, and Eric's is serious because of the type and number of firearms.  Because of those factors, investigators were concerned that he was trafficking in firearms or amassing weapons because of some ideology.  The police response to the Quinn home was overwhelming and militarized.  They rolled multiple armored tank-like vehicles onto the front lawn.  There were over a dozen officers dressed in full fatigues and helmets with semi- or fully automatic rifles and a battering ram.  There were perhaps a dozen other police cars and officers parked up and down their block.  They called out to the household, and indeed the entire neighborhood, on a speaker system in the late afternoon on a sunny day to come out, unarmed, hands up.  Eric, Felicia, and their twin nine-year-old boys were home, and they were completely terrified.  None of the officers' suspicions about Eric's purpose in possessing the weapons were true.  He had no malicious or dangerous intent or plans.

Eric is prohibited because of a conviction from when he was 21 years-old, over 15 years ago.  He was crumbling under a number of pressures: he was a full-

7

time college student, he was working, his maternal grandmother had a severe heart attack followed by bypass surgery, and he was dealing with an on-the-job injury. He was experiencing ongoing pain, was prescribed Percocet, and was beginning to feel dependent. He was also involved in a toxic relationship with a woman who, according to Eric's mother, was verbally and emotionally abusive and demanded that he shower her with extravagances beyond his means. Eric decided to commit a robbery with a demand note in March 2010 because he wanted to buy her an engagement ring. During the pendency of that case, he submitted to a mental health evaluation, which found him to be suffering from dissociative episodes.

That offense was aberrant behavior. He had never before—or since—found himself in such a low and dangerous place. And he has gone on to build a completely different kind of life and is part of a marriage of equals with Felicia.

Eric became interested in guns as a teen when his parents bought ten acres of property in Westfield, Pennsylvania. His father Bill taught Eric and his brother how to shoot targets and skeet on that land. He taught them gun safety, including how to safely clean and store guns. Ex. B, p. 7; C, p. 2-3. Bill was a good protector, as is Eric. Eric's interest in firearms comes from this bonding hobby with his father, his mechanical inclination, and his role as a protector. Ex. E.

Mr. Quinn is a mechanical hobbyist.  He's a machinist by trade and he is a skilled welder.  He explained to his interrogators that he reads online forums about how to make parts and machines.  He had a technical fascination with how guns, as small machines, work and had an interest in building them himself.  Mr. Quinn was challenged by whether or not he could build them successfully.

Further, Eric's ADHD and collecting behavior is what drove the number of his purchases.  "His ADHD manifests as hyperfixation — for many years, that focus was on firearms: understanding their mechanics, modifications, and usage.  This focus was, in part, a way to remain close to his late father.  However, this same hyperfixation, compounded by impulsivity and executive dysfunction, played a key role in the decisions that led to his current legal trouble."  Ex. E.

Eric would become interested in a model in a particular color or size or a rare type of ammunition.  His fastidious nature and tendency toward hyperfixation have long been with him and is evident in the way that he acquires and stores his tools, his sneakers, his sunglasses,



e.g.  His letters of support from coworkers and employers also describe this attention to detail, working beyond his expected schedule and at tasks beyond his responsibility to keep a clean and safe workplace.  Ex. D.



Mr. Quinn purchased the firearm components on the internet through DHgate, a Chinese online store, with an app that anyone can download on their phones. He used his and his wife's credit cards, and the Chinese company shipped them to his home. He was not acting with any subterfuge.

He did not carry firearms. He has never brandished a gun or threatened anyone and is horrified by gun violence. As he explained to investigators, and as the investigation bore out, he was never trafficking in firearms nor does he subscribe to any violent ideology.

## III.   Mr. Quinn is Deeply Remorseful.

*"Don't we all wish we had a Time Machine to right the wrongs of our past?"*[3]

Mr. Quinn immediately gave a full and complete post-arrest statement, without counsel present. He was cooperative and completely forthcoming, admitting

---

[3] Ex. D, p. 1.

to all of his conduct.  The parties took some time engaging in plea negotiations, but Mr. Quinn has always voluntarily admitted his actions and his wrongdoing.  Mr. Quinn knows right from wrong, and he knows very clearly that his actions merit consequences.  He has pled guilty to a federal felony offense, which worries him; he has negligible criminal history and has never been incarcerated; he completed his prior term of probation successfully.  He is deeply remorseful, and his disappointment in himself is palpable.  Ex. A, Eric Quinn Letter; Ex. B, p. 9-10.

Eric has accepted responsibility and internalized the public safety concerns that his conduct created.  Foremost in his mind is his fear of being separated from Felicia and his boys.  *See* Exs. A-E.  Indeed, the folks who have written letters of support worry for the boys and how much they need Eric, and the negative consequences they may suffer without him.  Eric's friends can see how much this case has impacted and changed his life, that he has committed to atonement, and that he is more than capable of rehabilitation.  *See, e.g.*, Exs. C and D.  Indeed, Catherine Luko notes:

> The carefree side of him has been replaced by a man who is present, emotionally raw, and focused on being with his family. This past summer, he had to take a job that required living apart from them, and his distress at the separation was overwhelming. He is terrified of missing the moments that matter — watching his boys grow up, supporting his wife, caring for his aging mother. That fear has led to increased emotional maturity and presence. He is working hard in treatment and continues to show insight and accountability.

11

Ex. E.

Mr. Quinn has been on pretrial release since August 6, 2024, and has complied with every condition of his release. He has always been responsive to and in regular contact with counsel and his supervising officer. He is thriving in his employment and earns wages his family needs to maintain their lives. He continues to be a dependable person to many family members and friends in need. In short, Mr. Quinn has established that he respects the Court's jurisdiction, is capable of following Court orders, and indeed, can be relied upon to continue to do so.

## IV.    A Non-Custodial Sentence is Warranted and Will Satisfy the Sentencing Factors Articulated in 18 U.S.C. § 3553(a)(2).

Incarcerating Mr. Quinn will devastate his family and deprive them of necessary resources. It is also unnecessary to satisfy the purposes of sentencing. He has been personally and specifically deterred, and a lengthy period of supervision will provide additional insurance. It follows that Mr. Quinn will continue to pose no threat to the public.

To reflect the seriousness of the offense and to satisfy general deterrence, the Court should consider alternatives to incarceration that are punishing. "Probation, like incarceration, is a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty." *United States v. Knights*, 534 U.S. 112, 119

(2001) (quoting *Griffin v. Wisconsin,* 483 U.S. 868, 874 (1976)). "Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled.'" *Id*. The Court could also impose a period of home detention.

Additionally, the penalty statute of Mr. Quinn's conviction authorizes the Court to sentence him to a fine in lieu of prison. 18 U.S.C. § 924(a)(8). Mr. Quinn has some ability to pay a fine, more so if imposed on an installment basis. A non-custodial sentence that includes a significant fine that creates a burden upon Mr. Quinn would act as a constant and long-lasting punishment and reminder of the heavy cost of his poor decision making. The obligations of probation, home detention, and a fine would be just punishment.

A nonguideline sentence will adequately deter Mr. Quinn and others. He is a stable man with impressionable tween sons who idolize him and need him during a crucial stage of their adolescent development. He has a loving marriage, home, and supportive family and friends. He is well-employed, provides for his family, and has some ability to pay a fine. He has proved that he respects the Court's jurisdiction and can be relied upon to follow every Court order and condition of supervision. Such a sentence is sufficient, but not greater than necessary, to comply with the Court's sentencing authority and discretion.

## V.    Conclusion

This Court has the authority within its legally appointed discretion to impose a sentence sufficient but not greater than necessary to accomplish the identified penological goals.  *See* 18 U.S.C. § 3553(a); *Tapia v. United States*, 131 S. Ct. 2382, 2387 (2011) (highlighting the four purposes of sentencing—retribution, deterrence, incapacitation, and rehabilitation).   The defense submits that a non-custodial sentence satisfies the penological goals of sentencing and adequately considers the nature of the offense and Mr. Quinn's personal history and characteristics.

Respectfully submitted,

ELENI KOUSOULIS
Federal Public Defender

Dated: <u>October 8, 2025</u>           <u>*/s/ Janet Bateman*</u>
JANET BATEMAN
First Assistant Federal Public Defender
District of Delaware
800 King Street, Suite 200
Wilmington, DE  19801
302-573-6010
de_ecf@fd.org

Attorneys for Eric Quinn

14