# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff | ) |
| v. | )  Case No. 1:25-cr-55-JLH |
| | ) |
| ERIC QUINN, | ) |
| | ) |
| Defendant. | ) |

### GOVERNMENT'S SENTENCING MEMORANDUM[1]

Defendant Eric Quinn lived in an idyllic suburban home in Middletown, Delaware. Inside that home, he assembled a small arsenal of firearms and machineguns that included nearly 1,900 rounds of ammunition, high-capacity magazines, and 14 firearms, all but one of which were unserialized privately manufactured firearms, or "ghost guns." Of most concern? Two of Quinn's ghost guns were equipped with machinegun conversion devices ("MCDs") that converted the firearms into fully automatic weapons—what federal law classifies as machineguns. Quinn possessed these weapons in a closet in the home where his two young children lived, despite knowing he was prohibited from possessing firearms from a prior robbery conviction.

To his credit, Quinn was forthcoming with investigators and accepted responsibility. He has used his time on pretrial release wisely to work, support his family and community, and attend counseling. Even so, the seriousness of his conduct, the need to deter other would-be illegal firearm and machinegun possessors, and the need to avoid unwarranted sentencing disparities counsel in favor of a Guidelines sentence. To account for Quinn's redeeming personal characteristics and community support, the government recommends a sentence at the very bottom of the Guidelines.

---

[1] As it does in every case, the government has filed a sealed Attachment A to this Memorandum.

1

## I. PROCEDURAL HISTORY

On August 1, 2024, Quinn was arrested following execution of an anticipatory search warrant after he purchased and brought MCDs—also known as "Glock switches" or "auto sears"—into the home where he resided with his wife and children. Revised Presentence Investigation Report ("PSR") ¶ 1, 17–20. Quinn was charged with possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1), and possession of a machinegun, in violation of 18 U.S.C. § 922(o)(1). *Id.* ¶ 2. On June 18, 2025, he pleaded guilty to those charges pursuant to an Information and Memorandum of Plea Agreement. *Id.* ¶ 6.

Applying the U.S. Sentencing Guidelines, the PSR calculated a total offense level of 25 and a criminal history category of I, resulting in a Guidelines imprisonment range of 57 to 71 months of incarceration. *Id.* ¶ 94.[2]

## II. THE OFFENSE CONDUCT

In July 2024, Quinn purchased two packages containing MCDs that came from China. PSR ¶ 17. Investigators with U.S. Customs and Border Protection seized the packages, confirmed that each one contained components constituting a functional MCD when put together, and investigated Quinn. *Id.* Investigators quickly learned Quinn is a prohibited person from a 2010 robbery conviction. *Id.* ¶ 18. On August 1, 2024, investigators obtained and executed an anticipatory search warrant of Quinn's home following a controlled delivery of the packages containing the MCDs, both of which Quinn accepted and brought into his home. *Id.* ¶ 20.

The search of Quinn's home—which he shares with his two young children and wife—revealed not just the two packages of MCDs Quinn ordered but also fourteen firearms. *Id.* ¶ 21.

---

[2] The PSR states that the bottom of the Guidelines imprisonment range is 51 months, when it is in fact 57 months. PSR ¶ 94. The government raised this point with the U.S. Probation Office in a letter transmitted via email on September 22, 2025.

Six were rifles. *Id.* Eight were pistols. *Id.* All but one of the firearms were privately manufactured firearms, or "ghost guns," which are untraceable by design because they lack serial numbers and can be assembled by people with basic tools. *Id.* Two of Quinn's ghost gun pistols were equipped with MCDs that turned them into fully automatic firearms. *Id.* In addition to the firearms, Quinn possessed 1,877 rounds of ammunition and extended magazines that allow traditional firearms to carry many more bullets than they are otherwise equipped to hold. *Id.*

After his arrest, investigators sat down to discuss with Quinn what he ordered and what they found in his home. *Id.* ¶ 23. Quinn was forthright, admitting to the conduct providing the basis for the instant offenses. *Id.*

### III.    SENTENCING CALCULATION

Quinn's base offense level is 20 because the offense involved machineguns and Quinn is a prohibited person. U.S.S.G. § 2K2.1(a)(4)(B). Because Quinn's offense involved 14 firearms, a four-level enhancement also applies. U.S.S.G. § 2K2.1(b)(1)(B). Moreover, Quinn knew that at least some of his weapons had no serial numbers, resulting in another four-level enhancement. U.S.S.G. § 2K2.1(b)(4)(B)(ii). After a three-level adjustment for Quinn's acceptance of responsibility, his total offense level of 25. U.S.S.G. §§ 3E1.1(a), (b); PSR ¶¶ 40–41. Quinn's criminal history category is I because his prior robbery conviction is more than 10 years old and did not result in a sentence of imprisonment exceeding one year and one month. U.S.S.G. § 4A1.2(e)(3); PSR ¶ 43. The correct Guidelines imprisonment range is therefore 57 to 71 months. U.S.S.G. § 5, Pt. A.

## IV. ANALYSIS OF STATUTORY FACTORS

Quinn possessed not just one or two firearms for his or his family's safety but *fourteen* firearms, including firearms equipped with MCDs that converted them into fully automatic machineguns. According to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), "a pistol equipped with a conversion device can fire up to 1200 rounds per minute – a faster rate of fire than the standard M-4 machinegun issued to U.S. military servicemembers."[3] MCDs present extreme danger. They have been linked to mass shootings and other acts of senseless violence in recent memory, including the 2024 Birmingham, Alabama, mass shooting that killed four people and injured 17 others in what "looked like a war scene."[4] Quinn not only ordered multiple packages containing MCDs, but he also possessed two ghost guns equipped with MCDs. He possessed those two fully automatic machineguns and a dozen other firearms, along with close to 1,900 rounds of ammunition, in a closet in the home he shared with two young children. He may have been a hyper-focused hobbyist and firearm afficionado who shared a love for firearms with his late father. Yet he also engaged in unjustified conduct given not just his prior felony conviction but more importantly the obvious danger machineguns pose to anyone, especially children.

---

[3] Fort Worth Manufacturer Charged in Glock Switch Case, Bureau of Alcohol, Tobacco, Firearms and Explosives (Nov. 17, 2022), https://www.atf.gov/news/press-releases/fort-worth-manufacturer-charged-glock-switch-case.

[4] S. Hrg. 118-644, How Bump Stocks and Other Gun Conversion Devices Are Amplifying the Gun Violence Epidemic: Hearing Before the S. Comm. on the Judiciary, 118th Cong. (2024), https://www.congress.gov/event/118th-congress/senate-event/336287/text; *see also* U.S. Dep't of Justice, Memorandum from Deputy Attorney General to All Federal Prosecutors re: Prosecution of Machinegun Conversion Devices (Sept. 6, 2024), https://www.justice.gov/archives/media/1366606/dl ("MCDs have been linked to an increasing number of notorious homicides, including a mass shooting at a sweet sixteen party in Dadeville, Alabama, where four young people were slain; a drive-by shooting in Cincinnati, Ohio, where an 11-year-old boy was killed; and a law enforcement-involved shooting in Houston, Texas where an officer was killed during a narcotics arrest.").

That Quinn ordered MCDs on multiple occasions and built up a noteworthy firearm stash suggests he had time to consider the consequences of his actions and did not act on the spur of any singular moment. His conscious decision to stockpile so much firepower belies his portrayal of his conduct as that of a mere collector. Firearm collectors put their cherished items on display, in cases, or on mounts or racks—in places where they can be admired and safeguarded. Quinn did no such thing; he compiled a small arsenal, hidden largely in his closet but also accessible to anyone who walked in. The Guidelines call for a significant prison sentence in part to promote respect for the law and to deter others from taking the steps Quinn took to acquire numerous deadly weapons. *See* 18 U.S.C. § 3553(a)(2)(A)–(B).

Although the Court must consider the seriousness of Quinn's offense, his lack of respect for the law, and deterrence considerations, it must also consider who Quinn is as a person. 18 U.S.C. § 3553(a)(1). He is a father. A husband. A son. An employee. A coach. In many ways, he has shown himself to be someone who can contribute meaningfully to society. He deserves credit for those admirable aspects of his personhood. However, he requests a sentence of probation, which falls conspicuously far below the sentences that other firearms offenders typically receive in this District, which is almost never probation and in most cases years of imprisonment. Indeed, even putting aside the fact that Quinn possessed machineguns, 97.7% of § 922(g) offenders were sentenced to prison in Fiscal Year 2024, with an average sentence for those who were not career offenders of 67 months of incarceration.[5] In fairness, only 8.6% of Fiscal Year 2024 offenders shared Quinn's Criminal History Category of I.[6] But even among the approximately one-third of § 922(g) defendants who received a downward variance, the average sentence reduction was

---

[5] U.S. Sentencing Comm'n, Quick Facts on Section 922(g) Offenses (Fiscal Year 2024), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Felon_In_Possession_FY24.pdf.
[6] *Id.*

34.7%.[7] Quinn's recommended sentence, if granted, would represent an outlier and potentially produce a sentencing disparity. *See* 18 U.S.C. § 3553(a)(6) (requiring the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").

      The Guideline range applicable to Quinn accounts for the fact that he does not pose as clear of a danger to society as someone with a history of violence. He rightly received no criminal history points (despite his prior robbery conviction), and he rightly received no enhancements linked to the use of violence or commission of other felony offenses. Instead, his Guidelines are driven by the large number of firearms he possessed, the fact that he possessed machineguns, and the fact that he possessed ghost guns, which are becoming particularly problematic and dangerous to society.[8] And when considering Quinn's history and characteristics, 18 U.S.C. §§ 3553(a)(1), the Court should also consider that Quinn did not face some of the same developmental challenges that many firearm offenders who come before this Court face. He grew up in a "close-knit," presumably middle-class family. PSR ¶¶ 54, 58. This is the type of upbringing that many firearm defendants born into challenging urban environments lack. The support Quinn has received in his life, both as a child and an adult, deserves attention from the Court, but it does not warrant a sentence strikingly lower than what others typically receive and that for which the Guidelines counsel.

/////

---

[7] *Id.*

[8] From 2016 through 2021, there were approximately 45,240 suspected ghost guns reported to ATF as having been recovered by law enforcement from potential crime scenes, including 692 homicides or attempted homicides. Bureau of Alcohol, Tobacco, Firearms and Explosives, Privately Made Firearms, https://www.atf.gov/firearms/privately-made-firearms (last visited Oct. 10, 2025).

## V. CONCLUSION

A bottom-of-the-Guidelines sentence of 57 months of imprisonment is a significant sentence that will have painful ramifications for Quinn and his family. The government's recommendation reflects those considerations while also accounting for the serious nature of Quinn's firearm and machinegun possession, promoting respect for the law, deterring other illegal firearm possessors, and avoiding unwarranted sentencing disparities. Such a sentence is therefore sufficient, but not greater than necessary, to satisfy the § 3553(a) factors.

        Respectfully submitted,

        JULIANNE E. MURRAY
        United States Attorney

By:    */s Bryan C. Williamson*
        Bryan C. Williamson
        Assistant United States Attorney

Dated: October 11, 2025